ANTONIO BETTENCOURT *vs.* TIMOTHY J. FALVEY *et al.*

MANUAL AMARAL *vs.* SAME.

MAY 31, 1945.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

CAPOTOSTO, J. These two actions in assumpsit on promissory notes were tried together to a jury and resulted in a verdict of $684.17 for each plaintiff. Defendants' motion for a new trial in each case was denied. The cases are be-

fore us on exceptions to these decisions and on certain other exceptions to rulings during the trial.

The plaintiffs and the defendants are the original parties to the two notes, which are identical except for the names of the respective payees. They are dated September 29, 1936, payable one year from that date, and signed by the defendants, Timothy J. Falvey and "Mrs. T. J. Falvey". Unless otherwise indicated the word defendant will hereinafter refer to Timothy J. Falvey.

It appears in evidence that in July 1936 the plaintiffs, who were experienced in running a laundry, agreed to go into the laundry business with the defendant, who apparently had no such experience, and to this end the parties incorporated as the Pawtuxet Valley Laundry, Inc., hereinafter called the corporation. Each plaintiff invested $750 in the venture and received therefor seven and one half shares of stock of the corporation, while the defendant invested $2000 and received twenty shares of that stock. The corporation had no other assets. This money, in the aggregate sum of $3500, was spent mainly in buying, for cash or on terms, the necessary machinery and installing the same on premises owned by defendant's wife, Mary F. Falvey, which she leased to the corporation for $1 a year. The laundry began to operate about the middle of August 1936, with the plaintiffs in charge of the business in its various branches, including the hiring of all help.

Some five weeks thereafter the corporation found itself unable to meet its obligations, which amounted to about $5000. The plaintiffs thereupon decided to sell their shares of stock in the corporation and, in conformity with a provision of its by-laws, first offered them to the defendant, who refused to buy them, as they were worthless in his opinion. Finding no other purchaser for the shares, the plaintiffs again offered them to the defendant, who finally consented to buy them, according to his testimony, upon certain terms and conditions.

The defendant testified that he agreed to pay $1000 to

each plaintiff, $500 in cash and $500 by promissory note payable in one year, on the following conditions: first, that each plaintiff continue to work for him, at least for that time, at a salary of $22 a week for Bettencourt and of $17 a week for Amaral; second, that each plaintiff would use his best efforts to build up the business of the laundry, as if it were his own; and, third, that each plaintiff would not engage in the laundry business in competition with him in that section of this state commonly known as the Pawtuxet Valley. Throughout his testimony the defendant insisted that he was not buying the shares of stock, as such, for they had no value; and that, although he took a transfer of the shares, what he really bought was "everything that went with it", including also "the good will of the business." The defendant further testified that this agreement, which was entered into at the laundry, was made known by the parties to the lawyer who drew the notes and also to Mrs. Falvey, when, at the plaintiffs' request, they all went to his home for her signature on the notes. The testimony of Mrs. Falvey in reference to the above-mentioned conditions is to the same effect.

In their testimony neither plaintiff recalled any definite agreement in connection with the notes. Amaral, however, admitted that he had agreed that, on the Monday following the delivery of the notes, he would start working for the defendant for $17 a week, while Bettencourt testified that he refused to work for the defendant, as the latter offered to pay him only $10 or $15 a week. Amaral also testified that he did not go to work on that Monday because, on the preceding Saturday, the defendant told him that he could not afford to pay him more than $10 a week. The defendant denied the testimony of both plaintiffs on this point.

Amaral further testified that he and Bettencourt worked on the Saturday of the week in which the notes were delivered. On the other hand, Falvey testified that the laundry was ordinarily closed on that day; that he had occasion to go to the laundry after working hours on Friday of that

week and saw nothing unusual about the place; that he next went there early the next Monday morning and found the place closed, neither the plaintiffs nor the other help having reported for work; that he then went looking for the plaintiffs and found Amaral picking up laundry for an independent laundry driver, so-called, but could not find Bettencourt. On this point the latter testified that he had gone to New York for a rest; that shortly after his return he bought out a laundry in Hope Valley; and that he did serve some customers in the Pawtuxet Valley, the territory covered by the defendant's laundry.

By questions, which were excluded on plaintiffs' objections, the defendants sought to show that when the defendant Falvey entered the laundry on Monday morning he found that the "flat" was gone, the records were missing, the boiler was disconnected and without water, the extractor was dismantled, and dye had been thrown into the washers. Following the rulings excluding these questions, the defendants made an offer of proof as to such matters, which was denied by the trial justice. The same situation, both as to the exclusion of testimony and the denial of an offer of proof, arose in connection with the testimony of defendants' witness Harry D. Whitman, who was with the defendant Falvey when he went to the laundry on that Monday morning. The issue raised by these rulings is the subject of defendants' exceptions 2, 3, 4, 5, 6, 7, 9, 10 and 11.

The defendants contend that the proffered testimony was pertinent, as it tended to show, when considered with all the other circumstances in evidence, a total failure of consideration for the notes, and that its exclusion was prejudicial error. The plaintiffs, on the other hand, contend that such testimony was immaterial, as the defendants had received all that was bought from the plaintiffs, namely, the fifteen shares of stock which they owned; and that the right to recover for any damages resulting from their alleged improper conduct was in the corporation and not in the defendants. The trial justice apparently adopted the plain-

tiffs' view in this matter and excluded the testimony under consideration.

In adopting this view the trial justice misconceived the real purpose of the testimony that was excluded. The controlling issue in the case was whether the transaction in question was the sale of shares of stock and nothing more, as the plaintiffs contend, or whether such sale was incidental to an agreement with the conditions hereinbefore set forth, as the defendants contend. It is clear to us that the excluded testimony was offered by the defendants as tending to prove, in conjunction with all the other circumstances in evidence, a breach of the alleged agreement amounting, in substance, to a total failure of consideration, which agreement, according to the defendants, was the real consideration for the transaction with the plaintiffs. In our opinion, such testimony had a material bearing on the question of defendants' liability and its exclusion was prejudicial error.

Defendants' exceptions 2, 3, 4, 5, 6, 7, 9, 10 and 11 are sustained. In view of this conclusion it becomes unnecessary to consider defendants' other exceptions.

The cases are remitted to the superior court for a new trial.

*Thomas J. Flynn, Edward L. Godfrey,* for plaintiffs.
*Joseph H. Coen, Carroll & Dwyer,* for defendants.